## In re O.P.M. LEASING SERVICES, INC., et al, Debtors.

### No. 86 Civ. 2957 (JMC).

United States District Court, S.D. New York.

Nov. 5, 1987.

Louis Scarcella, Gerald C. Bender, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for appellant Occidental Petroleum Services, Inc.

Menachem O. Zelmanovitz, Peter M. Levine, Zalkin, Rodin & Goodman, New York City, for Trustee James P. Hassett.

## OPINION

CANNELLA, District Judge.

Bankruptcy Judge Burton R. Lifland's Order of March 10, 1986, allowing the claim of Occidental Petroleum Services, Inc. in the amount of $214,674.40, is affirmed. 28 U.S.C. § 158(a).

## BACKGROUND

The facts underlying this appeal from an Order of Bankruptcy Judge Burton R. Lifland are not in dispute. The debtor, O.P.M. Leasing Services, Inc. ["O.P.M."], had been in the business of buying, selling and leasing new and used computer equipment. On May 26, 1977, O.P.M. entered into a Written Master Agreement of Lease ["Master Agreement"] with the appellant Occidental Petroleum Services, Inc. ["Occidental"]. Pursuant to the Master Agreement, O.P.M., as lessor, and Occidental, as lessee, entered into Equipment Schedule No. 6 [the "Schedule"], dated September 10, 1978.

Under the Master Agreement and the Schedule, O.P.M. leased to Occidental certain computer equipment for a term of 84 months, due to expire on November 30, 1985. Occidental was obligated to make monthly payments for the length of the term, but had an option to terminate the

Schedule after 36 months. At or about the time the Schedule was executed, O.P.M. sold the equipment to Lehman Brothers Kuhn Loeb, Inc. ["Lehman Brothers"], simultaneously leasing it back for a term of 108 months, due to expire on November 30, 1987. Under the terms of its agreement, O.P.M. assigned its interest in the payments due under the Schedule to Lehman Brothers. In order to finance its purchase of the equipment, Lehman Brothers entered into an agreement with Manufacturers Hanover Lease, Inc. ["MHLC"], granting MHLC a security interest in the equipment and an assignment of rights under the Schedule.

A provision in the Master Agreement required Occidental to make its monthly payments to MHLC, as assignee, regardless of any default or breach by O.P.M. In addition, if Occidental elected not to terminate the Schedule prior to the expiration of the 84–month term, it was obligated to make, on October 25, 1985, a termination payment to MHLC, as assignee, in the amount of $981,250 ["termination payment"]. Under the Schedule, payment by Occidental on that date would trigger an obligation of O.P.M. to reimburse Occidental for a percentage of the termination payment, or approximately $392,500. The Schedule fixed the amounts of the termination and reimbursement payments.

On March 11, 1981, O.P.M. filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code [the "petition date"]. On March 27, James P. Hassett was appointed trustee [the "Trustee"]. By notice of motion and application dated February 14, 1984, the Trustee applied to the Bankruptcy Court for an order, pursuant to 11 U.S.C. § 365, approving his rejection of the Schedule as an unexpired lease affording no benefit to the estate of the debtor. Following a hearing, Judge Lifland entered an Order on March 6, 1984, granting the Trustee's application and directing any party alleging damages from the rejection of the Schedule to file a claim within thirty days. Subsequently, Occidental filed a claim for the $392,500 reimbursement due under the Schedule, and for various expenses and attorney's fees [the "Oc-

cidental claim"]. Occidental later agreed to withdraw its claim for expenses and attorney's fees. On October 25, 1985, Occidental made the $981,250 termination payment to MHLC.

The Trustee filed an objection to Occidental's claim. He sought to have the amount of $392,500 discounted to its present value as of the date O.P.M. filed its petition. A hearing was held on March 5, 1986, at which time Judge Lifland sustained the Trustee's objection to the amount of Occidental's claim. On March 10, 1986, an Order was entered allowing the claim, but in the discounted amount of $214,674.40. Thereupon, Occidental commenced this appeal.

## DISCUSSION

This appeal raises the sole issue of whether Judge Lifland erred in discounting Occidental's claim to its present value as of the date O.P.M. filed its petition in bankruptcy.

### A. *Standard of Review*

Pursuant to 28 U.S.C. § 158(a), the district court has "jurisdiction to hear appeals from final judgments, orders, and decrees" of the bankruptcy court. Bankruptcy Rule 8013 provides that the district court "may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings." Although a bankruptcy court's findings of fact should not be disturbed unless "clearly erroneous," its conclusions of law may be reviewed *de novo*. See *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984); *In re Dill*, 731 F.2d 629, 631 (9th Cir.1984); *In re Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir.1980) (a bankruptcy court's conclusions of law are "freely reviewable").

### B. *The Statutory Framework*

Section 365(a) of the Bankruptcy Code provides that a "trustee, subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The

trustee may elect to assume or to reject at "any time before the confirmation of a plan" of reorganization. *Id.* § 365(d)(2). Generally, a business judgment rule is used by the bankruptcy court in determining whether the trustee's assumption or rejection should be approved. *See In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 118 (Bankr.S.D.N.Y.1982). In addition, "the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2).

Under the Code, "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease ... immediately before the date of the filing of the petition." *Id.* § 365(g)(1). The breach is treated as occurring "immediately preceding the date of the petition." *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 349 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6305; *see also* S.Rep. No. 989, 95th Cong., 2d Sess. 60 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5846 ("The purpose [of § 365(g) ] is to treat rejection claim[s] as prepetition claims."); *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 530, 104 S.Ct. 1188, 1198, 79 L.Ed.2d 482 (1984) ("[T]he rejection of an executory contract [or unexpired lease] ... constitutes a breach of the contract [or lease] which relates back to the date immediately preceding the filing of a petition in bankruptcy."); *In re Davies,* 27 B.R. 898, 900 (Bankr.E.D. N.Y.1983) ("Under [§ 365(g)(1) of] the Code, a rejection gives rise to a legal fiction that a breach of the contract occurred immediately prior to the filing of the petition.").

Section 502(a) of the Code provides for the allowance of a claim that arises from the rejection of an executory contract or unexpired lease. The trustee or another party in interest may file an objection to the claim. In that event, section 502(b) provides, in relevant part:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall deter-

mine the amount of such claim ... *as of the date of the filing of the petition,* and shall allow such claim in such amount....

11 U.S.C. § 502(b) (emphasis added).

Section 502(b) makes specific reference to § 502(g). Section 502(g) deals with claims arising from the rejection of executory contracts and unexpired leases and provides that:

> [a] claim arising from the rejection, under section 365 of this title ... of an unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section ... *the same as if such claim had arisen before the date of the filing of the petition.*

11 U.S.C. § 502(g) (emphasis added).

Occidental concedes that "the Code and accompanying legislative history make it clear that the postpetition rejection of an unexpired lease is considered a prepetition event, which for classification purposes renders the rejection damages claim a general unsecured one." Brief of Appellant at 20, 86 Civ. 2957 (JMC) (S.D.N.Y. June 6, 1986) ["Appellant's Brief"] (quoting *In re O.P.M. Leasing Services, Inc.,* 56 B.R. 678, 682–83 (Bankr.S.D.N.Y.1986)).

### C. *Judge Lifland's March 10, 1986 Order*

#### 1. *The Northrop Decision*

Judge Lifland's March 10, 1986 Order was delivered from the bench. However, he stated at that time that his decision was "on all fours" with his previous decision in *In re O.P.M. Leasing Services, Inc.,* 56 B.R. 678 (Bankr.S.D.N.Y.1986) ["*Northrop*"], a case which stemmed from the same bankruptcy proceeding as the instant one. In *Northrop,* the Trustee rejected a nearly identical unexpired lease entered into between O.P.M., as lessor, and Northrop, as lessee. O.P.M. had leased certain computer equipment to Northrop and then assigned to a third party its right to receive rental payments pursuant to a written "schedule" of dates and payments. Consequently, no payments were ever paid by

Northrop to O.P.M. The Trustee elected to reject the O.P.M.–Northrop schedule, as it obligated O.P.M. to reimburse Northrop for monthly payments made pursuant to it, but which did not accrue to O.P.M.'s benefit. On December 29, 1983, Judge Lifland signed an order approving the Trustee's rejection.

A total of eleven monthly payments remained to be made on dates falling beyond the rejection date. Northrop made these payments. In total, Northrop made post-petition payments amounting to $812,-788.37 and, subsequent to the Trustee's rejection, filed a claim for reimbursement. Thus, the only true difference between the facts in *Northrop* and those in the instant case is that Northrop made monthly payments after the petition and rejection dates for which reimbursement was sought, while Occidental made a lump-sum termination payment of $981,250 after the rejection date, for which it sought a $392,500 reimbursement. Accordingly, the *Northrop* decision may be used as an adequate basis for analyzing Judge Lifland's Order in the instant case.

### 2. *Determination of the Amount of Occidental's Claim*

Occidental makes two essential arguments in support of its appeal from Judge Lifland's Order. First, Occidental argues that neither the Bankruptcy Code nor cases interpreting those provisions concerning the rejection of executory contracts and unexpired leases provide any authority to discount the amount of Occidental's claim to its present value as of the petition date. Second, Occidental argues that its claim may not be discounted because to do so would violate the fundamental economic rationale underlying present value discounting.

■ The Court first addresses Occidental's argument that the Bankruptcy Code does not provide for the discounting of rejection claims to their present value as of the petition date. In the Court's view, §§ 365, 502(b) and 502(g) of the Code must be read in conjunction in order to fulfill the statutory purpose regarding the allowance

of claims arising from rejection. First, an unexpired lease, otherwise not assumed or rejected by the trustee, does not give rise to a provable claim against the debtor. *See In re Cochise College Park, Inc.,* 703 F.2d 1339, 1352 (9th Cir.1983); *Mohonk Realty Corp. v. Wise Shoe Stores, Inc.,* 111 F.2d 287, 290 (2d Cir.), *cert. denied,* 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418 (1940). The trustee's rejection, however, constitutes "a breach ... immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1).

A claim arising out of the rejection of the unexpired lease "is deemed allowed," unless there is an objection. *Id.* § 502(a). If there is an objection, the bankruptcy court is required to "determine the amount of such claim ... as of the filing of the petition." *Id.* § 502(b). A "claim arising from the rejection" of an unexpired lease "shall be determined, and shall be allowed under [section 502(b)] the same as if such claim had arisen before the date of the filing of the petition." *Id.* § 502(g). Thus, on their face, §§ 502(b) and 502(g) mandate that the value, or amount of rejection claim be determined as of the petition date. *See In re Davies,* 27 B.R. at 900 ("[A] claim is allowable for those damages resulting from the breach, and the court will determine the amount and the validity of the claim as of the breach.") (citing 11 U.S.C. § 502(b)). The Court agrees that a "determin[ation of] the amount of such claim," 11 U.S.C. § 502(b), cannot be distinguished from a determination of the value of the claim as of the petition date, 11 U.S.C. § 502(g), because "[a]ny valuation of a claim is necessarily embodied in § 502(b) so that the amount of the claim to be allowed ... is properly ascertained." *Northrop,* 56 B.R. at 684.

■ In the Court's view, the statutory framework provides for the allowance of a claim arising from the rejection of an unexpired lease in that amount which would be recoverable by the non-breaching party as of the time the petition was filed. *See Cochise,* 703 F.2d at 1353 & nn. 13–14 (citing cases); *Workman v. Harrison,* 282 F.2d 693, 699 (10th Cir.1960) (A claim aris-

ing from the rejection of an executory contract "is limited to the value of ... contract at the date the petition in bankruptcy was filed."). This construction invariably creates a legal fiction that, on March 11, 1981, O.P.M. declared its unwillingness to fulfill its obligation to reimburse Occidental in October 1985. This fictional "anticipatory breach" gave rise to a provable claim against O.P.M. for damages. As of March 1981, however, Occidental would have been entitled to collect from O.P.M. only the discounted amount arrived at by Judge Lifland. *See Northrop*, 56 B.R. at 684 ("The Code provides a clear directive that whenever general unsecured claims are incurred, whether pre- or postpetition, they are calculated for damage assessment purposes as occurring as of the date the petition was filed.").

Occidental argues that the interplay of §§ 502(b) and 502(g) requires merely that a postpetition claim arising from a trustee's rejection be treated as a prepetition claim "for purposes of distribution as general unsecured prepetition claims rather than post-petition administration claims." Reply Brief of Appellant at 6, 86 Civ. 2957 (JMC) (S.D.N.Y. July 25, 1986). This argument, however, essentially grounded in the fact that the Bankruptcy Code does not explicitly call for the discounting of postpetition claims, overlooks the otherwise clear language of § 502(b) requiring the bankruptcy court to "determine the amount of such claim ... as of the date of the filing of the petition."

Thus, to accept Occidental's argument would render the language found in §§ 502(b) and 502(g) meaningless. Sections 502(b) and 502(g) concern the allowance of claims arising from the postpetition rejection of executory contracts and unexpired leases. Given the nature of such agreements, a rejection deemed to constitute a breach as of the petition date will always give rise to a claim for future deprivation of benefits. Judge Lifland was correct, therefore, in stating that "when viewed as of the Filing Date, [these damages] constitute the deprivation of future benefits." *Northrop*, 56 B.R. at 685. Were postpetition claims always to be allowed in full,

there would be no reason for the bankruptcy court to "determine the amount of such claim ... *as of the date of the filing of the petition*," 11 U.S.C. § 502(b) (emphasis added); the underscored language would be mere surplusage. Accordingly, it is the Court's view that the statute itself mandates that a postpetition rejection fixes the liability of the debtor and, consequently, the recovery of the creditor, as of the petition date.

### 3. *Policy Behind Present Value Discount*

Occidental also argues that to discount its claim defeats the underlying economic rationale behind the application of a present value discount. Present value "simply means that a dollar received today is worth more than a dollar to be received in the future." Appellant's Brief at 10. The device "is used to prevent an injured party from obtaining prepayment of its claim and thus having the use of those funds in advance of the time such funds would normally have been received." *Id.* (citing *Chesapeake & Ohio Railway Co. v. Kelly*, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916)).

Occidental's argument, at times compelling in a strictly equitable sense, is that the application of a present value discount is justified only when payment of money in satisfaction of a judgment is actually contemplated. As a general matter, the Court has no difficulty with Occidental's analysis regarding the circumstances under which present value discounting is usually applied. However, Occidental's argument is unpersuasive insofar as it ignores the rather clear mandate of the statutory language and otherwise undermines Judge Lifland's analysis in *Northrop*.

In *Northrop*, Judge Lifland relied, at least in part, upon the case of *In re Marshall's Garage, Inc.*, 63 F.2d 759 (2d Cir. 1933). In that case, the Second Circuit fixed the amount of a creditor's claim on a unexpired lease as of the petition date, stating that "[t]he present value ... must be found as of the date of the filing of the petition in bankruptcy, *which sets the line*

*of cleavage for provable debts.*" *Id.* at 763 (emphasis added). Occidental argues that the Bankruptcy Court's reliance on this case was misplaced. To the extent that the principle expressed in *Marshall's Garage* conforms to the current statutory scheme, however, the Court disagrees with Occidental's contention that Judge Lifland improperly relied on it in reaching his decision. *See Northrop,* 56 B.R. at 684 ("Although *Marshall's Garage* was a case arising under the Bankruptcy Act of 1898, the underlying policy has been carried through in the Code."); *see also In re United American Financial Corp.,* 55 B.R. 117, 119–20 (Bankr.E.D.Tenn.1985).

In addition, Judge Lifland relied on the case of *In re Winston Mills, Inc.,* 6 B.R. 587 (Bankr.S.D.N.Y.1980). In that case, the debtor had guaranteed two leases executed by its subsidiary. When the subsidiary defaulted, all the installments under the lease became due immediately, pursuant to a liquidated damages clause. Five months later, the debtor filed a petition in bankruptcy. The bankruptcy court held that the claim for the accelerated payment of the installments had to be discounted to their present value as of the petition date:

> A reduction of an award to present value is necessitated by the fact that money presently in hand is always more useful than staggered payments in the future. To allow a full recovery would, in effect, overcompensate the claimants by the interest earning power of the money in their hands now.

*Id.* at 599–600.

Occidental does not challenge the validity of the holding in *Winston Mills,* but contends that it is inapplicable to the instant case because "the claimants in *Winston Mills* sought payment in full for unpaid installments, while [Occidental] seeks reimbursement for an amount actually paid in full." Appellant's Brief at 16. This distinction, however, is not significant. Occidental places much emphasis on the fact that it made the full termination payment after the Trustee's rejection of the Schedule. But Occidental was obligated to make the termination payment to MHLC, regardless of any default or breach by O.P.M. Occidental continues to ignore that, by operation of the statute, the Trustee's rejection became a breach of O.P.M.'s obligation to reimburse Occidental as of March 1981. When viewed as of that date, Occidental had a claim not for immediate reimbursement, but for a deprivation of a future benefit—*i.e.,* O.P.M.'s reimbursement following Occidental's payment in October 1985.

Occidental also fails to point out that Judge Lifland further relied on the principle that "[d]amages in a bankruptcy case must be measured in accordance with accepted contract law principles." *Northrop,* 56 B.R. at 684 (citing *Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134, 135 (3d Cir.1982)). In *Bittner,* the court stated that in determining the value of a claim pursuant to 11 U.S.C. § 502, "the [bankruptcy] court is bound by the legal rules which may govern the ultimate value of the claim.... [W]hen the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law." 691 F.2d at 135 (citing 3 *Collier on Bankruptcy* ¶ 57.15[3.2] (14th ed. 1977)).

Noting that the discounting of claims to their present value "has traditionally been followed when determining the amount of an unsecured obligation which is due in the future," 56 B.R. at 684 (citations omitted), Judge Lifland went on to state that "'[a]ctual damages in the bankruptcy setting are calculated in the manner set out'" in *City Bank Farmers Trust Co. v. Irving Trust Co.,* 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1937). 56 B.R. at 685 (quoting *In re Good Hope Industries, Inc.,* 16 B.R. 702, 703 (Bankr.D.Mass.1982)). In *City Bank,* the Supreme Court stated that "[t]he amount of [a] landlord's claim for the loss of his lease necessarily is the difference between the remainder of the term and the rent reserved both discounted to present worth." 299 U.S. at 443, 57 S.Ct. at 297; *see In re W.T. Grant Co.,* 36 B.R. 939, 941 (Bankr.S.D.N.Y.1984) (citing *City Bank* formula with approval).

The Court acknowledges that discounting Occidental's claim has the effect of fixing the amount of the O.P.M.'s liability as of the petition date to the same degree as if O.P.M. was prepared to make payment at that time. This is, of course, not the case. However, other provisions in the statutory scheme support the conclusion that this seemingly inequitable result was intended by Congress when it provided a trustee with the option to reject executory contracts offering no benefit to the estate, and provided further that such a rejection would be deemed a breach relating back to the petition date. For example, under § 502(b)(2), claims arising from rejection are to be allowed "except to the extent that ... such claim is for unmatured interest." Although reference to the section of the Code dealing with the disallowance of claims that reflect unmatured interest is not dispositive of the issue at hand, it is instructive. A claimant who was entitled to receive full payment on or before the petition date, will receive only that amount owed him as of that date, despite the ordinary accrual of interest between the petition date and the date of distribution. At distribution, this creditor's entitlement to the interest value on his claim from the petition date forward is no less significant than the creditor who, as of the petition date, could claim only a future deprivation of money owed. To assure equality of treatment of creditors at distribution, therefore, the creditor in the latter case should be entitled to collect from the debtor only the discounted value of his claim as of the petition date.

Equality of treatment at distribution is a fundamental principle underlying the bankruptcy laws. *See* 5 *Collier on Bankruptcy* ¶ 1123.01[4] (15th ed. 1986). By discounting a claim arising from the postpetition rejection of an executory contract or unexpired lease, the postpetition claimant is treated the same as the pre-petition claimant, an explicitly stated purpose of 11 U.S.C. § 365. In conclusion, therefore, both the Bankruptcy Code and the analysis in *Northrop* indicate that Judge Lifland was correct in discounting the amount of Occidental's claim to its present value as of the petition date.

## CONCLUSION

For all of the foregoing reasons, Bankruptcy Judge Burton R. Lifland's Order of March 10, 1986, which allowed the claim of Occidental Petroleum Services, Inc. in the amount of $214,674.40, is affirmed. 28 U.S.C. § 158(a).

SO ORDERED.