**In re PROVIDENCE TELEVISION LIMITED PARTNERSHIP, d/b/a WSTG–TV 64, Debtor.**

**Bankruptcy No. 86 B 5387.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 26, 1990.

Steven B. Towbin and Marilyn I. Kosin of Towbin & Zazove, Ltd., Chicago, Ill., for debtor.

Michael R. Enright of Arvey, Hodes, Costello & Burman, Chicago, Ill., for respondent, Blackburn & Co.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter comes before the court on the motion of Providence Television Limited Partnership, f/d/b/a WSTG–TV 64 ("Providence") for summary judgment or, in the alternative, entry of an order specifying which material facts are in dispute on its objection to the priority claim of Blackburn & Co. of Illinois, Inc. ("Blackburn" or "Claimant"). For the reasons set forth herein, the court, after considering the pleadings, exhibits and memoranda, does hereby grant the motion for summary judgment.

## I. JURISDICTION AND PROCEDURE

The court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334(b) and General Orders of the United States District Court for the Northern District of Illinois. The motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## II. UNDISPUTED FACTS

Providence owned and operated a UHF television station that was known as WSTG–TV 64 ("Station"). The Station served the Providence, Rhode Island, metropolitan area.

On or about May 1, 1985, Providence employed Blackburn pursuant to an Employment Agreement ("Agreement") to act as the media broker for the sale of the Station.[1] The Agreement provided that Providence employed and appointed Blackburn as Providence's exclusive agent to negotiate and sell the Station, subject to the approval of the Federal Communications Commission. The Agreement provides in pertinent part:

Seller [Providence] agrees during the life of this agreement that it will deal exclusively through Blackburn, and Seller will not offer or sell said station directly, or through any other agency, and that all negotiations for sale and inquiries regarding sale will be referred to Blackburn ... Seller shall pay to Blackburn a commission as calculated above on any sale, whether contracted for during the term of this employment or within one year thereafter, by Seller to any Purchaser to whom said station was presented by Blackburn during the life of this agreement.

See Agreement.

On April 7, 1986, Providence commenced its case under chapter 11 of the Bankruptcy Code. (11 U.S.C. § 101 et seq. All reference sections are to the Bankruptcy Code unless otherwise noted.)

As of April 7, 1986, Blackburn had not produced or negotiated a purchase offer on terms or conditions satisfactory to Prov-

idence. Blackburn alleges that Blackburn had procured offers prior to the chapter 11 filing that were rejected by Providence and that Blackburn continued in its efforts to procure offers for the Station subsequent to the petition date. Blackburn also claims that at no time did Providence or its attorneys indicate that Blackburn would not be compensated for its services.

It is undisputed that at no time did Providence as debtor in possession seek approval from the court to employ Blackburn pursuant to § 327 of the Code, nor did it seek approval from the court to assume the Agreement pursuant to § 365. Blackburn never made a request to the court for an order directing Providence to assume the Agreement pursuant to § 365(d)(2).

On July 2, 1986, the court authorized Providence to sell the Station to Sudbrink Broadcasting of New England, Inc. ("Sudbrink") pursuant to the terms of a certain agreement ("Purchase Agreement"). Blackburn makes no claim that it was involved in any manner in securing the purchaser or in consummating the sale of the Station to Sudbrink. Blackburn claims that Providence failed to refer Sudbrink to Blackburn as required under the Agreement.

Paragraph 19.1 of Article XIX of the Purchase Agreement provides in pertinent part:

Seller [Providence] and Buyer [Sudbrink] represent and warrant each to the other that it has not taken any action on account of which a claim by any person could arise for any brokerage fee or commission with respect to the negotiation, execution and performance of this Agreement, and each of Seller and Buyer agrees to indemnify, defend and hold harmless the other party from and against any loss, claim or expense arising from a breach off its foregoing representations and warranties.

See Purchase Order attached to Findings of Fact, Conclusions of Law and Order, July 2, 1986, hereinafter "Sale Order."

---

1. Subsequent to May 1, 1985, Blackburn & Company of Illinois, an Illinois corporation, merged with Blackburn & Co., Inc., a Delaware corpora-

tion. Blackburn & Co. of Illinois filed the proof of claim in this case.

On October 31, 1986, Blackburn filed a proof of claim seeking priority treatment in the amount of $207,000 plus fees and costs. The claim is for the commission allegedly due Blackburn from the sale of the Station to Sudbrink.

On July 3, 1989, Providence filed an objection to the allowance of Blackburn's claim. On December 5, 1989, Providence moved for summary judgment pursuant to Fed.R.Civ.P. 56 on its objection or, in the alternative, entry of an order pursuant to Fed.R.Civ.P. 56(d) specifying which material facts are in dispute.

## III. STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides the statutory criteria for summary judgement which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) provides in pertinent part:

> [T]he judgement sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law.

Fed.R.Civ.P. 56(c).

The moving party has the burden of showing that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The policy behind granting a motion for summary judgement is avoiding trials when there is no genuine issue of material fact in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986)). When the record, taken as a whole, does not lead a rational trier of fact to find for the non-moving party there is no genuine issue for

trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

■ The party opposing a motion which is supported by a prima facie showing that the moving party is entitled to judgement as a matter of law may not rest upon the mere allegations or denials in its pleadings. Rather, the non-moving party must show in its response that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. All reasonable inferences which are drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, National Association v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987). Furthermore, the disputed fact or facts must be determinative of the outcome under applicable law for a factual dispute to be precluded by summary judgement. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

## IV. DISCUSSION

Providence argues that it is entitled to summary judgment because Blackburn is not entitled to an allowed administrative or general unsecured claim as a matter of law. Providence basis its argument on the following grounds:

(1) Blackburn is not entitled to an allowed administrative claim under § 510(a)(1) because Blackburn was not employed pursuant to § 327;

(2) Blackburn's pre-petition Agreement was not assumed pursuant to § 365 and an executory contract cannot be impliedly assumed by conduct;

(3) An executory contract pertaining to the employment of a professional person cannot be assumed under § 365 as a means to circumvent § 327;

(4) Blackburn failed to comply with its principal obligation under the Agreement and is not entitled to any claim against the estate; and

(5) The July 2, 1986 Sale Order bars Blackburn from asserting a claim for the payment of a brokerage fee under the doctrine of *res judicata*.[2]

*See* Memorandum in Support of Debtor's Motion for Summary Judgment or Alternative Relief with Respect to the Claim Filed by Blackburn & Co. of Illinois, hereinafter "Memorandum in Support of Motion".

Blackburn argues that it is entitled to full commission as provided in the Agreement, assuming Illinois law applies.[3] Providence alleges that the motion for summary judgment should be denied for the following reasons:

(1) Providence breached the Agreement which granted Blackburn the exclusive right to sell the property and entitled Blackburn to a commission irrespective of whether it "presented" the Station to the purchaser or ultimately procured the sale;

(2) Blackburn is entitled to a priority claim since the Agreement was an executory contract that was not terminated prior to the date Providence filed bankruptcy and was assumed by Providence by virtue of its post-petition conduct;

(3) If Blackburn is not entitled to a priority claim, Blackburn is entitled to a claim as a general unsecured creditor on the basis that the contract was never terminated and Blackburn fully performed its obligations; and

(4) The doctrine of *res judicata* does not bar Blackburn from asserting its claim.

*See* Memorandum in Response to Debtor's Motion for Summary Judgment or Alternative Relief with Respect to the Claim Filed by Blackburn & Co. of Illinois, Inc., hereinafter "Memorandum in Response to Motion."

Blackburn argues that the brokerage commission due should be treated as an administrative expense under § 507(a)(1) based on Providence's conduct which effec-

tively assumed the Agreement. The court cannot concur with this line of reasoning because to do so would render § 327 ineffectual and contravene the express language of the Bankruptcy Code.

■ Section 327 of the Bankruptcy Code provides in pertinent part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327. Pursuant to § 1107, a debtor in possession has all the rights and powers of a trustee serving in a case under chapter 11. Thus, Providence could employ professional persons pursuant to § 327.

■ Rule 2014(a) of the Bankruptcy Rules states that "an order approving employment of attorneys, ... or other professionals pursuant to § 327 ... shall be made only on application ..." Fed.R.Bankr.P. 2014. It is clear that any "professional person" is required to obtain court approval for employment or continued employment that began pre-petition.

■ The court finds that Blackburn is a professional person for purposes of § 327. Bankruptcy courts have routinely held that real estate brokers are "professional persons." *In re Channel 2 Associates*, 88 B.R. 351, 352 (Bankr.D.N.M.1988); *In re 31–33 Corp.*, 100 B.R. 744, 746 (Bankr.E.D. Pa.1989); *In re Roberts*, 58 B.R. 65, 67 (Bankr.D.N.J.1986); *Frankfurth v. Cummins* (In re Cummins), 8 B.R. 701, 702 (Bankr.C.D.Cal.1981) *reversed and remanded on other grounds*, 15 B.R. 893 (9th Cir.1981), *reh. den.*, 20 B.R. 652 (9th Cir.1982).

---

**2.** Providence also argued that Blackburn was not entitled to a post-petition claim as an employee pursuant to § 507(a)(3). Blackburn does not dispute this contention and alleges it never asserted that it was an employee entitled to a § 507(a)(3) priority.

**3.** Blackburn does not concede Illinois law applies in analyzing the Agreement but, for purposes of this motion, assumes that Illinois law applies because Providence's Memorandum in Support of Motion is likewise premised.

The policy reasons for the strict application of § 327 to any professional, including realtors, are strong and definite. The assets of the debtor in possession must be protected from unnecessary and unjust diminutions in order to protect the rights of creditors. *In re 31–33 Corp.*, 100 B.R. at 746. Professional services performed for a debtor in possession are compensable out of the estate assets only if such professional services were court-authorized prior to the rendering of the services. *In re Met–L–Wood Corp.*, 103 B.R. 972, 975 (Bankr.N.D.Ill.1989). It is clear that:

> The fact that such services may have been beneficial or valuable to the estate and performed in good faith is immaterial, as is any hardship to the unauthorized professional. *Matter of Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir.1981). This rule must necessarily be firm in order to "maintain control of costs." *In re Garland*, 8 B.R. 826, 828 (Mass.1981). Otherwise, the "necessary power of the court to ensure that assets of the estate are not wasted", would be undermined. *In re Fiberglass Specialty Co., Inc.*, 12 B.R. 119, 121 (Minn.1981).

*Id.*

■ Blackburn, being a professional person under the Code, must meet the requirements of § 503(b)(2) in order to recover the commission. Section 503(b)(2) provides in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> .     .     .     .     .
>
> (2) compensation and reimbursement awarded under section 330(a) of this title;
> ...

11 U.S.C. § 503. Section 330(a) allows compensation to many entities, including a professional employed pursuant to § 327. Blackburn was not approved by the court as required by § 327. The claim for an administrative expense payment must therefore be denied.

Blackburn argues that bankruptcy courts in this district have recognized that brokerage agreements can be executory contracts under § 365. *See Jones v. State Bank of Arthur (In re Jones)*, 98 B.R. 399 (Bankr. C.D.Ill.1988); *In re Murtishi*, 55 B.R. 564 (Bankr.N.D.Ill.1985).[4] Providence, on the other hand, argues that § 365 cannot be used to circumvent the requirements of § 327. Even if the Agreement was an executory contract, Blackburn is a professional person. Compensation for professionals is governed by § 330, which requires § 327 court approval. *In re Channel 2 Associates*, 88 B.R. at 352–353.

■ Blackburn has ignored an important fact in formulating its argument. Providence, as a debtor in possession, is not bound by a pre-petition contract unless the contract is assumed pursuant to § 365 of the Bankruptcy Code. The United States Supreme Court specifically stated in *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 532–533, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984), that the filing of a petition in bankruptcy makes a pre-petition contract no longer automatically enforceable and that the pre-petition contract may never be enforceable again. The state of the law is as follows:

> Accordingly, after *Bildisco* one can state with considerable certainty that the non-debtor party to an executory contract cannot require the DIP [debtor in possession] to adhere to the terms of the contract, for that contract is "unenforceable" against the DIP unless and until it is assumed. Stated differently, the *Bildisco* Court concluded that the DIP is *not* in fact bound by the provisions of an executory contract unless the DIP subsequently assumes the contract.

59 Am.Bankr.L.J. 197, 200 (1985).

■ Putting aside the § 327 question, the assumption of the executory contract

---

**4.** The courts in both *Jones* and *Murtishi* determined that the brokerage agreements at issue were not executory contracts because the brokers in these cases had fully performed their obligations pre-petition and the contracts were no longer executory. Blackburn argues that neither court held that brokerage agreements could never be executory contracts *per se*. *See* Memorandum in Response to Motion, p. 10–12. Neither court addressed the applicability of § 327 in its analysis.

which is outside of the ordinary course of business generally cannot be by conduct alone. The plain language of § 365 does not permit such an assumption. A debtor in possession, *subject to court approval,* may assume or reject any executory contract of the debtor. 11 U.S.C. § 365(a) (emphasis added). The Seventh Circuit, quoting itself *In re American Trust,* 426 F.2d 1059, 1064 (7th Cir.1970), stated " 'assumption or adoption of the contract can only be effected through an express order of the judge.' " (*quoting* 6 Collier on Bankruptcy 576–580 (14th ed.)). *Matter of Whitcomb & Keller Mortg. Co., Inc.,* 715 F.2d 375, 380 (7th Cir.1983).

■ Blackburn cites *Matter of Reda, Inc.,* 54 B.R. 871 (Bankr.N.D.Ill.1985), as authority for the proposition that a debtor can assume an executory contract by virtue of postpetition conduct. In *Matter of Reda,* the debtor hired a fire insurance adjuster prior to the filing of bankruptcy. The contract was clearly an executory contract. The adjuster continued to perform services for the debtor after the filing of the petition. The adjuster testified that he was unaware of the debtor's bankruptcy petition until after completing his work. The debtor, meanwhile, willingly accepted the benefits of the contract, did not reject the contract and did not request that the adjuster stop performing. *Id.* at 872–880.

The court held that the debtor assumed the contract by its actions and gave its approval *nunc pro tunc.* The court stated that "this case presents the *rare* instance where the debtor's actions with regard to an executory contract constitute an assumption of that agreement for § 365 purposes." *Id.* at 880 (emphasis added).

Blackburn argues that the situation in the case at hand is analogous to that of *Matter of Reda.* Even though Blackburn did not ultimately effectuate the sale of the Station to Sudbrink because Providence failed to refer Sudbrink to Blackburn, Blackburn was "instrumental in setting the market for sale, which efforts and resulting benefits Providence willingly accepted." Memorandum in Response to Motion, p. 14–15. *See* Affidavit of Alan C. Tindal

and attached Exhibits. Blackburn further argues that in reliance on Providence's conduct and the fact that Blackburn never received any type of notification of termination of the contract as required by the Agreement, Blackburn had no reason to think that either Blackburn's or Providence's obligations under the Agreement were no longer in existence. Blackburn argues that since Providence never terminated the Agreement and Providence continued to accept the services rendered by Blackburn, it should be deemed to have assumed the executory contract under the rationale set forth in *Matter of Reda.* If Blackburn is not entitled to a priority claim, than it should nevertheless be entitled to a claim as a general unsecured creditor. Memorandum in Response to Motion, p. 12–16.

The court agrees with Providence that the facts in the case at hand are distinguishable from those of *Matter of Reda.* First, the adjuster in *Matter of Reda* testified that he had no knowledge of the bankruptcy case until after he completed performing his obligations. *Matter of Reda,* 54 B.R. at 880. That was not the situation here. Blackburn never alleges that it had no knowledge of this fact and Blackburn had actual knowledge that Providence was a chapter 11 debtor in possession. *See* Affidavit of Alan C. Tindal, generally.

Second, the adjuster provided a quantifiable benefit to the estate that entitled the adjuster to a superpriority claim under § 506(c). *Matter of Reda,* 54 B.R. at 880. The court stated that "but for the efforts of Lazurus–Willis [adjuster] there would be no fund to be battling over." *Id.* at 881. In the case at hand, Blackburn admits that it did not directly solicit an offer from Sudbrink, did not participate in the negotiations between Providence and Sudbrink, and was not involved in the consummation of the sale of the Station to Sudbrink. Blackburn alleges, however, that its efforts had a direct impact on the resulting Sudbrink offer. The benefit to the estate in the case at hand, however, is not comparable to the situation in *Matter of Reda.*

Lastly, the court specifically stated that the adjuster was not a "professional person" for § 327 purposes. *Id.* at 882 n. 25. Blackburn, for the above-stated reasons, is clearly a "professional person." The court in *Matter of Reda* did not consider § 327 in deciding that the contract was the type of executory contract that could be assumed by conduct alone.

It is clear to the court that *Matter of Reda* was a "rare case" and distinguishable from the present case. Providence, as debtor in possession, never assumed the contract pursuant to § 365 and is not bound to perform the contract as it was prior to the filing of bankruptcy. Although this result may appear harsh and unfair to Blackburn, the court strongly believes it is its responsibility and duty to abide by the plain language of the Bankruptcy Code and the underlying principles regarding the reasons for the statute. The idea that a debtor in possession can enter into binding obligations not in the ordinary course of business without prior court authority undermines the entire bankruptcy system in existence today and opens the door for great mischief. These types of obligations, like the Agreement in question, if enforced could eat up the assets of the estate and remove what little possibility for distributions to creditors exist in these cases. Creditors are entitled to notice prior to authorization of such a distribution. The court is of the opinion that it has no other choice but to grant the motion for summary judgment.

■■■■■ The last argument raised by Providence is the applicability of the doctrine of *res judicata* to Blackburn's claim. Three elements must be satisfied before an action will be precluded by *res judicata.* The elements are as follows: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits. *Matter of Energy Co-op, Inc.,* 814 F.2d 1226, 1230 (7th Cir. 1987), *cert. denied,* 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). Blackburn argues that the three elements are not present in the case at hand. The court

agrees but this does not affect the court's decision to grant summary judgment.

## V. CONCLUSION

■■■ For the foregoing reasons, the court grants Providence's motion for summary judgment on its objection to the priority claim of Blackburn. Blackburn, however, is given leave to file an amended proof of claim as an unsecured creditor. This claim cannot be based on the commission which would have been paid to Blackburn had the Agreement been assumed. Blackburn must specify what the damages are other than what has been disallowed in this claim (for example, out-of-pocket expenses which Blackburn incurred).

The court would also like to remind the attorneys for both parties that General Rule 9(d) of the United States District Court for the Northern District of Illinois is applicable to these proceedings. The court will not be so lenient in the future in accepting briefs beyond the fifteen (15) page limit without prior court approval.