In re S.N.A. NUT COMPANY, Debtor.

S.N.A. NUT COMPANY, Plaintiff,

v.

The HAAGEN–DAZS COMPANY, INC., Defendant.

Bankruptcy Nos. 94 B 5993, 95 A 196.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 22, 1996.

Michael Desmond, United States Trustee, Chicago, IL.

Ronald R. Peterson, Catherine Steege, Frances Gecker, Jerry L. Switzer, Jr., Jenner & Block, Chicago, IL.

James R. Figliulo, Peter A. Silverman, Foran & Schultz, Chicago, IL.

Richard Q. Russeth, Teaneck, NJ, for Haagen–Dazs Company, Inc.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the Motion of S.N.A. Nut Company ("Debtor") to Strike the Affirmative Defense and Dismiss the Counterclaim of Haagen–Dazs Company, Inc. ("Haagen–Dazs"). Debtor was engaged in the business of processing and selling various types of nuts. On March 24, 1994, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.) ("Code"). On January 12, 1995, its Liquidating Joint Plan of Reorganization ("Plan") was confirmed by the Court. The Plan provides that executory contracts which were not assumed or rejected by the Plan confirmation date are to be deemed rejected.

On February 28, 1995, Debtor filed an adversary complaint seeking to recover $452,024.02 for unpaid post-petition sales to Haagen–Dazs. Debtor alleges that between September 30, 1994, and November 30, 1994, it made nine shipments of nuts to Haagen–Dazs which remain unpaid in the total amount of $450,843.02. Debtor also claims that Haagen–Dazs owes an additional $1,181

for its shortfalls on payments relating to previous shipments of goods.

Haagen–Dazs admits that it received seven of the post-petition shipments for which it has not paid. Haagen–Dazs affirmatively asserts, however, that these shipments were made pursuant to a one-year supply contract at a set price for pecans entered into pre-petition on February 18, 1994. That contract was breached by rejection. As a result of Debtor's breach, Haagen–Dazs claims that it was damaged in an unspecified amount due to its being required to procure pecans from other suppliers at a price greater than the contract price. Consequently, Haagen–Dazs asserts both an affirmative defense and a counterclaim against Debtor on the grounds that it has a right to setoff.

Debtor moves to strike Haagen Dazs' affirmative defense and dismiss the counterclaim. It argues that Haagen–Dazs does not meet the setoff requirements under § 553(a) of the Code, since rejection does not give rise to a post-petition claim, and the claims to be setoff are not "mutual" obligations. In addition, Debtor asserts that the alleged one-year supply contract upon which Haagen–Dazs' claim is based does not satisfy the Statute of Frauds.

The court has jurisdiction to hear this matter under 28 U.S.C. § 1334, and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) & (O).

## I. STATEMENT OF APPLICABLE STANDARDS

Motions to strike and to dismiss are governed by Federal Rule of Civil Procedure 12(f), which applies in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b). The proper procedure by which a plaintiff may challenge a defendant's affirmative defense is through a motion to strike. *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736–37 (N.D.Ill.1982). "Affirmative defenses will be

stricken only when they are insufficient on the face of the pleadings." *United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir.1975). "If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter will be stricken as legally insufficient." *Bobbitt,* 532 F.Supp. at 737; *see also Williams v. Jader Fuel Co., Inc.,* 944 F.2d 1388, 1400 (7th Cir.1991). In order to succeed on a motion to dismiss a counterclaim, it must be clear from the pleadings that the defendant can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Meriwether v. Faulkner,* 821 F.2d 408, 411 (7th Cir.1987). The court must take as true all well pleaded material facts in the counterclaims, and must view those facts, and all reasonable inferences which may be drawn from them, in a light most favorable to the defendant. *Infinity Broadcasting Corp. v. Prudential Insurance Co.,* 869 F.2d 1073, 1075 (7th Cir.1989). The court may not consider matters outside the pleadings. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984). The issue is not whether a defendant will ultimately prevail on the counterclaims, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## II. STATEMENT OF LAW AND DISCUSSION

Haagen–Dazs asserts setoff rights based on Debtor's alleged breach of a pre-petition supply contract. Haagen–Dazs pleads in its counterclaim both the existence of the contract and its breach by Debtor. Consequently, for purposes of determining the motion to strike and dismiss, the Court will accept these facts as true. The only breach which is apparent from the record, however, is breach by Debtor's rejection of the contract.[1]

---

1. If the breach occurred pre-petition, Haagen–Dazs would be entitled to a pre-petition claim against the estate. 11 U.S.C. § 502 (1993 & Supp.1995). If the breach resulted from a con- tract which was not assumed or rejected prior to confirmation, the contract would have been rejected under the Plan. Plan of Reorganization, Art. V, § 5.1. This would entitle Haagen–Dazs to

In order to exercise setoff rights under § 553(a) of the Code, a creditor must prove that there is "mutuality" between its claim against the estate, and the debt sought to be setoff. 11 U.S.C. § 553(a). It is well settled that "mutuality" is absent when a creditor attempts to offset its pre-petition claim against a post-petition debt owed to the debtor which came into existence after the filing of the bankruptcy case. *See Pettibone Corporation v. United States*, 34 F.3d 536, 538–39 (7th Cir.1994); *In re Communicall Central, Inc.*, 106 B.R. 540, 545 (Bankr. N.D.Ill.1989); *In re NTG Industries, Inc.*, 103 B.R. 195, 197 (Bankr.N.D.Ill.1989); *In re Energy Cooperative Inc.*, 32 B.R. 680, 682 (Bankr.N.D.Ill.1983).

Haagen–Dazs claims that it was damaged when Debtor stopped supplying nuts, requiring it to "cover" by purchasing pecans on the open market at a higher price. On March 23, 1994, when Debtor filed its bankruptcy petition, this contract remained executory, since "the obligation [sic] of both the [Debtor] and the other party to the contract [were] so far unperformed that the failure to complete performance would be a material breach excusing performance of the other." *In re Crippin*, 877 F.2d 594, 596 (7th Cir.1989) (citations omitted).

A Chapter 11 debtor-in-possession may assume or reject an executory contract at any time prior to plan confirmation, unless the court, on the request of the other party to the contract, requires that the decision be made at an earlier point in time. 11 U.S.C. §§ 365(d)(2), 1107(a). The Seventh Circuit has made clear that absent an express order by the court, an executory contract will not be deemed assumed or rejected prior to confirmation. *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 380 (7th Cir.1983).

The Supreme Court has determined that after a debtor commences a Chapter 11 proceeding, but before executory contracts are assumed or rejected under § 365(a), these contracts remain in existence, enforceable by the debtor but not against the debtor. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 532, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984); *see also United States v. Dewey Freight System*, 31 F.3d 620, 624 (8th Cir.1994); *In re Providence Television Limited Partnership*, 113 B.R. 446, 451 (Bankr. N.D.Ill.1990).[2]

If the debtor rejects the executory contract, the injured party receives a pre-petition claim for damages resulting from the rejection which is afforded general unsecured priority. 11 U.S.C. §§ 365(g)(1), 502(g); *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1198–99, 79 L.Ed.2d 482 (1984); *United States v. Dewey Freight System, Inc.*, 31 F.3d 620, 624 (8th Cir.1994).

The executory supply contract at issue was not accepted or rejected by the Debtor prior to confirmation of its Plan of Reorganiza-

a pre-petition claim. 11 U.S.C. §§ 365(g)(1), 502(g). However, § 553(a) does not allow pre-petition claims to be setoff against post-petition claims. *See Pettibone Corporation v. United States*, 34 F.3d 536, 538–39 (7th Cir.1994). Consequently, were the court to infer that the alleged breach occurred either pre-petition or post-confirmation, then Haagen–Dazs' affirmative defense and counterclaim would fail under § 553(a) in light of the post-petition nature of Debtor's claim.

Debtor argues that Haagen–Dazs admitted that the one-year supply contract was rejected under the Plan in its counterclaim. Thus, it maintains that Haagen–Dazs is bound to a pre-petition claim against the estate. The Defendant's counterclaim states, "[t]he Debtor has purportedly rejected the parties' executory contract pursuant to 11 U.S.C. § 365(g)(1), which constitutes a pre-petition breach of contract."

**2.** Although the Supreme Court dealt with collective bargaining agreements in *Bildisco & Bildisco*, its determination has been interpreted to include all types of executory contracts. *See In re Providence Television Limited Partnership*, 113 B.R. at 451 (brokerage agreement); *In re O.P.M. Leasing Services, Inc.*, 79 B.R. 161, 164 (S.D.N.Y. 1987) (lease agreement); *In re Feyline Presents, Inc.*, 81 B.R. 623, 626 (Bankr.D.Colo.1988) (promotion and exclusive rights agreement); *In re Wilson*, 69 B.R. 960, 965 (Bankr.N.D.Tex.1987) (operating agreement). *See also*, Douglas W. Bordewieck, *The Postpetition, Pre-rejection, Pre-assumption Status of an Executory Contract*, 59 Am.Bankr.L.J. 197, 200 (1985) (noting that "[in *Bildisco*] the Court spoke in general terms; it did not limit its discussion to the particular executory contract").

tion,[3] which rejected all executory contracts that had not been previously assumed or rejected. Plan of Reorganization, Article V, § 5.1. No order approving acceptance or rejection of the contract was ever sought. *See In re Whitcomb & Keller Mortgage Co.,* 715 F.2d at 380 (holding that assumption of executory contracts can be only effected through a court order).

Haagen–Dazs cites to *In re Reda, Inc.,* 54 B.R. 871 (Bankr.N.D.Ill.1985), in arguing that Debtor's post-petition performance warrants a finding that it implicitly assumed the supply contract prior to the confirmation date. In *re Reda,* a fire insurance adjuster continued to perform services for the debtor after the bankruptcy filing pursuant to an executory contract formed pre-petition. No Plan was confirmed, and no order was entered or sought approving acceptance or rejection of the contract. Nevertheless, the Court gave *nunc pro tunc* approval to the debtor's assumption of the contract, since it knowingly and willingly accepted the insurance adjuster's post-petition services, which were provided without knowledge of the bankruptcy filing. In doing so, the court acknowledged that "[t]his case presents the *rare instance* where the debtor's actions with regard to an executory contract constitute assumption of that agreement for § 365(a) purposes." *Id.* at 880 (emphasis added).

However, in none of the cases cited by the *Reda* Court as authority for this proposition was it expressly determined that the debtor's post-petition conduct with respect to an executory contract constituted assumption of the agreement under § 365 of the Code. Furthermore, cases cited by the *Reda* Court to support its holding relied on authority under the Bankruptcy Act. Under the Act, assumption of executory contracts was governed by § 70(b), and Former Bankruptcy Rule 607 which stated that "[w]henever practicable, the trustee shall obtain approval of the court before he assumes [an executory contract]." Former Fed.R.Bankr.P. 607. This caused a division of authority on whether assumption or rejection of an executory

contract required court approval under the Act. Some courts held that post-petition conduct by the debtor revealing its intent to assume was sufficient to constitute assumption absent court approval. *See In re Steel-Ship Corp.,* 576 F.2d 128 (8th Cir.1978); *Brown v. Presbyterian Ministers Fund,* 484 F.2d 998 (3rd Cir.1973). Others required court approval for assumption or rejection. *See In re American National Trust,* 426 F.2d 1059 (7th Cir.1970); *Texas Importing Co. v. Banco Popular de Puerto Rico,* 360 F.2d 582 (5th Cir.1966).

■ However, § 365(a) expressly states that "subject to the court's approval" a debtor may assume or reject an executory contract. 11 U.S.C. § 365(a). The Seventh Circuit has stated that "assumption or adoption of [executory contracts] can only be effected through an express order of the judge." *In re Whitcomb & Keller Mortgage Co.,* 715 F.2d at 380. Consequently, the authority cited by the *Reda* Court in support of its holding lacks continued vitality under the Code.

Furthermore, courts confronting the issue of whether a debtor can assume an executory contract through its post-petition conduct under the Code have explicitly disagreed with the *Reda* Court's determination. *See In re Providence Television Limited Partnership,* 113 B.R. 446, 452–53 (Bankr.N.D.Ill.1990); *In re Consumer Health Services of America, Inc.,* 171 B.R. 917, 920–21 (Bankr.D.D.C. 1994); *In re Broaddus Hospital Association,* 159 B.R. 763, 771–72 (Bankr.N.D.W.Va.1993); *In re Metro Transportation Co.,* 87 B.R. 338, 342 (Bankr.E.D.Pa.1988); *In re Memorial Hospital of Iowa County, Inc.,* 82 B.R. 478, 483–84 (W.D.Wis.1988); *In re A.H. Robins Company, Inc.,* 68 B.R. 705, 708–11 (Bankr. E.D.Va.1986). *Cf. In re Miami General Hospital Inc.,* 89 B.R. 980 (Bankr.S.D.Fla. 1988).

Even were the Court persuaded that *In re Reda* exists as a narrow exception to the Code prohibition on assumption of executory contracts through post-petition conduct, the case at bar is readily distinguishable on its

---

**3.** The Court will take judicial notice that no such order has been entered in the S.N.A. bankruptcy

proceeding.

facts. The injured party to the contract in *In re Reda* provided post-petition services which resulted in a quantifiable benefit to the Debtor's estate. However, no such finding can be made with respect to Haagen–Dazs, since it was the recipient rather than the supplier of goods. Thus, given that the supply contract was not assumed by Debtor's post-petition conduct, Haagen–Dazs is not entitled to a post-petition claim stemming from its subsequent breach.

Any claim to damages flowing from Debtor's breach of the supply contract cited in Haagen–Dazs' affirmative defense and counterclaim must result from rejection of the contract in the Plan of Reorganization. Pursuant to § 365(g)(1) and § 502(g), any damages resulting from such a rejection are considered to "relate back" prior to the bankruptcy filing, and give rise to a pre-petition claim afforded general unsecured priority. However, as a pre-petition claim, it lacks the "mutuality" required for setoff with Debtor's post-petition claim under § 553(a) of the Code.

Consequently, taking as true Haagen–Dazs' assertion that a one-year supply contract existed and was breached by Debtor, this Court finds that Haagen–Dazs has no claim which can be setoff against the Debtor's post-petition claim alleged in the Complaint under § 553(a) of the Code.

### III. CONCLUSION

For the aforementioned reasons, Debtor's Motion to Strike Haagen–Dazs' Affirmative Defense and Counterclaim is granted.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion, IT IS HEREBY ORDERED, that the Debtor's Motion to Strike Haagen–Dazs' Affirmative Defense and Counterclaim is granted.