blended amount.  Congress must have known it was altering the traditional rule of aggregation when it created exceptions for some services but not for others.  Whether categorized as punishment or not, the fact remains that Congress amended the Medicare statute in an attempt to stop hospitals from using Medicare funds to subsidize non-Medicare patients.  The Secretary's regulations mandating disaggregation unquestionably further that intent, and while perhaps not the kindest choice of policy, they certainly constitute a reasonable interpretation of the statute.

### IV.

Because the statutory language is sufficiently clear, and because the Secretary's regulations are neither arbitrary nor capricious, we **AFFIRM** the district court's decision.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0396P (6th Cir.)
File Name:  00a0396p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

HENRY FORD HEALTH SYSTEM,
        *Plaintiff-Appellant*,

        *v.*

DONNA E. SHALALA,
Secretary, Department of
Health and Human Services,
        *Defendant-Appellee.*

No. 99-1831

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
Nos. 97-60226; 98-60311—George C. Steeh,
District Judge.

Argued:  October 25, 2000

Decided and Filed:  November 21, 2000

Before:  MARTIN, Chief Judge; NORRIS, Circuit Judge;
FORESTER, District Judge.[*]

————————

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** Christopher L. Crosswhite, DUANE, MORRIS & HECKSCHER, Washington, D.C., for Appellant. Anne Murphy, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Appellee. **ON BRIEF:** Christopher L. Crosswhite, Jeffrey P. Bloom, DUANE, MORRIS & HECKSCHER, Washington, D.C., for Appellant. Anne Murphy, Anthony J. Steinmeyer, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Appellee.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Chief Judge. This case concerns the amount of reimbursement that the Medicare program should pay Henry Ford Health Systems for outpatient hospital services furnished to Medicare patients in Henry Ford's fiscal years ending 1989, 1990, and 1992. Henry Ford contends that the Secretary's regulations mandating disaggregation of certain services from all other outpatient services when calculating reimbursement amounts violate the Medicare statute and congressional intent. The district court granted summary judgment to the Secretary. For the following reasons, we AFFIRM.

I.

Congress established the Medicare program in 1965 as Title XVIII of the Social Security Act in order to provide hospital and medical coverage to most persons over sixty-five years of age and to certain disabled persons. *See* 42 U.S.C. § 1395c. Under the Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare program on his or her behalf for covered services furnished by service providers

not be used to subsidize non-Medicare beneficiaries. Taking the statute as a whole, we cannot say that the Secretary's decision to aggregate services for coinsurance payments and disaggregate services for hospital reimbursement is an arbitrary and capricious application of the various congressional mandates contained within the Medicare statute, particularly when each approach furthers Congress's stated intent to avoid paying non-covered individuals' health care costs.

Furthermore, we see no inconsistency in the Secretary's application of the carry-forward rule. First, the Secretary issued the carry-forward regulations on her own initiative, rather than as a response to a direct statutory directive. Second, the Secretary had already proposed to eliminate those regulations before Congress modified the reimbursement scheme, and in fact eliminated those provisions in a final rule, issued prior to the implementation of the regulations before us today. *See* 53 Fed. Reg. 10,077 (1988). We agree with the Secretary that she can hardly be deemed to have acted in an arbitrary and capricious manner when she changes her approach to reimbursement because Congress has amended the reimbursement statute.

Finally, Henry Ford claims that the Secretary's regulations requiring disaggregation for reimbursement calculations amount to an attempt to punish hospitals with a high ratio of costs to charges for a particular category of services. In Henry Ford's view, Congress only intended to limit reimbursement by the newly created blend amount limitation. Under the Secretary's regulations, however, a hospital may receive less reimbursement under disaggregation even if the blend amount is not the limiting factor - disaggregation alone affects the result. Henry Ford's argument fails to take into account that Congress took two distinct steps when altering the traditionally aggregated reimbursement scheme. First, it explicitly took ambulatory surgical, radiology, and diagnostic services out of the general lesser of costs or charges calculation. Second, it directed that a comparison be made between the lesser of costs or charges *for each service* and the

refused to consider other alternatives, particularly where, as here, her ultimate decision followed Congress's clearly expressed intent.

Henry Ford also argues that the Secretary's disaggregation regulations are arbitrary and capricious because she is inconsistent in her practice of aggregation and disaggregation. Henry Ford points to two instances where the Secretary aggregates the same figures that she disaggregates when calculating reimbursements. The first area is coinsurance; the same statutory section that sets out the lesser of costs or charges rule provides that coinsurance payments made by patients must be deducted from Medicare reimbursements. *See* 42 U.S.C. § 1395*l*(a)(2)(B). While both this coinsurance deduction and the lesser of costs or charges calculation are subject to the same exclusionary language, the Secretary aggregates ambulatory surgical, radiology, and diagnostic services with all other outpatient services for coinsurance payment purposes and disaggregates them when applying the lesser of costs or charges rule. In the second area, the "carry-forward" rule, which was abandoned by the Secretary in 1988, allowed hospitals to carry forward their unreimbursed costs to the next fiscal year, and the Secretary limited carry-forward reimbursement to the aggregate sum of all outpatient services, including ambulatory surgery, radiology, and diagnostics.

Although inconsistent application of a regulation is often a hallmark of arbitrary or capricious agency action, we do not find that in this context the Secretary's varying approaches warrant such a determination. In the case of coinsurance payments, the Secretary defends her decision to aggregate on the grounds that the statute requires her to calculate Medicare reimbursement so that Medicare does not subsidize hospital care for non-beneficiaries. *See* 42 U.S.C. § 1395x(v)(1)(A) (providing that reimbursement should be calculated so that costs with respect to non-covered individuals will not be borne by Medicare). Although the Secretary's approach to the statute's language arguably differs depending on whether she is reimbursing hospitals or deducting coinsurance payments, each approach reflects Congress's intent that Medicare funds

participating in the Medicare program. *See* 42 U.S.C. §§ 1395d, 1395*l*. The Medicare program consists of two parts: Part A covers inpatient hospital services and certain other institutional services, and Part B covers outpatient hospital services and health care practitioner services. *See* 42 U.S.C. §§ 1395c, 1395j, respectively. The Secretary has delegated administration of the Medicare program to the Health Care Financing Administration, which in turn has contracted with private insurance companies called "fiscal intermediaries" to handle claims processing and to determine proper payments to participating providers for services rendered to Medicare beneficiaries. *See* 42 U.S.C. § 1395h.

A.

In 1972, Congress established the lesser of costs or charges rule in order to ensure that the Medicare program would not pay more for services than the provider charged to the general public. *See* Social Security Amendments of 1972, § 233, Pub. L. 92-603 (*codified as amended at* 42 U.S.C. §§ 1395f(b), 1395*l*(a)(2)); H.Rep. No. 92-231 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5087-8. This rule limited Medicare reimbursement for all services, inpatient and outpatient, to the lesser of the hospital's reasonable costs of such services or the hospital's customary charges for the services. *See* 42 U.S.C. §§ 1395f(b), 1395*l*(a)(2). The Secretary promulgated regulations stating that the lesser of costs or charges rule would be applied to the amount obtained from aggregating both Part A (inpatient) and Part B (outpatient) services' reasonable costs and customary charges. *See* 42 C.F.R. § 405.455(c) (1974). In 1983, Congress directed the Secretary to issue regulations eliminating the aggregation of Part A and Part B figures when applying the lesser of costs or charges rule and requiring the amount to be calculated and reported separately for each type of service. *See* Deficit Reduction Act of 1984, § 2308(a) (1984).

In 1986, Congress modified the lesser of costs or charges payment formula for facility services related to outpatient

ambulatory surgical center procedures.[1] *See* Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, § 9343(a), 100 Stat. 2039 (*codified as amended at* 42 U.S.C. § 1395*l*(i)(3)(A)). The new payment formula required use of a "blend" amount, based on calculations that take into account the typical hospital rate for such services and also the cheaper rates charged by non-hospitals, in order to begin easing hospitals toward a method of reimbursement based on a set fee rather than on the hospital's cost for ambulatory surgery. *See* H.R. CONF. REP. NO. 98-1012 at 354 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3999. Under the modified payment formula, ambulatory surgical services were to be reimbursed for the lesser of costs or charges or the blend amount. *See id.* The Secretary interpreted the modified payment formula as requiring the separation and disaggregation of the reasonable costs and customary charges of ambulatory surgical services from all other outpatient services when applying the lesser of costs or charges rule. *See* 52 Fed. Reg. 36765, 36766 (Oct. 1, 1987). Accordingly, the Secretary issued regulations that required calculating reimbursement for outpatient ambulatory surgical services at the lesser of costs or charges or the blend amount, and reimbursement for all other outpatient services at the lesser of costs or charges. *See* 42 U.S.C. §§ 413.13(c)(2)(ii); 413.118(e).

In 1987, Congress again modified the payment formula, this time with respect to radiology and other diagnostic services, requiring that reimbursement for these services also be limited by blend amounts. *See* Omnibus Budget Reconciliation Act of 1987, § 4066, Pub. L. No. 100-203, 101 Stat. 1330-112 (*codified as amended at* 42 U.S.C. §§ 1395*l*(a)(2)(E); 1395*l*(n)(1)). Thereafter, reimbursement for both radiology and diagnostic services would, like ambulatory surgical services, be for the lesser of costs or charges or the blend amount. *See id.* Again, the Secretary interpreted the formula modification as requiring the

---

[1] Ambulatory surgical center procedures are those surgical procedures that are frequently performed in a freestanding surgery center on an outpatient basis (i.e., without an inpatient hospital stay).

Henry Ford contends that the disaggregation method creates incentives for hospitals to raise their charges in order to ensure the hospital's costs will be reimbursed, which causes a proportional increase in the coinsurance amount beneficiaries must pay. The fact that the Secretary's decision may have an impact on Medicare beneficiaries, however, is not enough to show that she failed to consider that impact. The Secretary stated that Congress, in creating the modified reimbursement schemes, was concerned that if the costs of Medicare were not controlled, the program would not survive. The Secretary notes that under the prior method of aggregation, Medicare often ended up subsidizing health care costs for the hospital's non-beneficiary patients. In instituting the regulations requiring disaggregation, the Secretary acted appropriately in weighing the costs of higher coinsurance payments against the costs of Medicare insolvency. Absent any evidence that she failed to *consider* any impact, we simply cannot hold the regulations arbitrary and capricious as a matter of law.

Henry Ford next claims that the Secretary's regulations are arbitrary and capricious because she did not consider aggregation as an option. The Secretary responded, and we agree, that she was not free to consider other alternatives, because the statute expressly directed that separate reimbursement calculations be performed with respect to ambulatory surgical, radiology, and diagnostic services. Even if the Secretary did have the authority to decide the aggregation/disaggregation question, the mere fact that she ultimately decided not to aggregate all costs and all charges does not answer whether she considered other options. In support of its argument, Henry Ford presents comments received by the Secretary showing that hospitals would lose money under the disaggregation method as proof that she failed to consider alternatives. This ignores Congress's modification of the reimbursement scheme with the intent of tightening Medicare's purse strings, necessarily impacting the provider hospitals. That the Secretary chose an alternative which forced some hospitals to shoulder heavy losses does not, without more, show that she arbitrarily and capriciously

we find the more logical reading to be that when the sections governing the separate calculations of ambulatory surgical, radiology, and diagnostic services refer to §1395*l*(a)(2)(B), it is merely to borrow the general rule's methodology of comparing costs to charges.

We therefore hold that the plain language of the statute mandates the separation of ambulatory surgical, radiology and diagnostic services from all other outpatient services and compels the Secretary's regulations requiring disaggregation of the named services when calculating reimbursement.

### III.

Even if we found the language of the Medicare statute ambiguous as to whether or not disaggregation is required, we would still uphold the Secretary's regulations, as they were neither arbitrary nor capricious under the Administrative Procedure Act. *See* 5 U.S.C. § 706. The Administrative Procedure Act applies to the Medicare statute and its regulations. *See* 42 U.S.C. § 1395oo(f). In *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), the Supreme Court stated that an agency rule would be arbitrary and capricious within the meaning of the Administrative Procedure Act "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*. at 43. Under *State Farm*, the arbitrary and capricious standard is "narrow, and a court is not to substitute its judgment for that of the agency." *Id.* (citation omitted).

Henry Ford first argues that the Secretary's regulations are arbitrary and capricious because she failed to consider an important aspect of the problem, namely, disaggregation's impact on beneficiaries. The Medicare statute requires beneficiaries to pay a coinsurance amount equal to twenty percent of customary charges. *See* 42 U.S.C. § 1395*l*(a), (b).

disaggregation of costs and charges for outpatient radiology and other diagnostic services from all other costs and charges for outpatient services when applying the lesser of costs or charges rule. *See* 56 Fed. Reg. 8832, 8837 (Mar. 1, 1991). Thus, for services provided on or after October 1, 1989, the Secretary reimbursed four categories of outpatient hospital services with the following separate calculations: 1) for ambulatory surgical services, the lesser of costs or charges or the blend amount; 2) for radiology, the lesser of costs or charges or the blend amount; 3) for diagnostic services, the lesser of costs or charges or the blend amount; 4) for all other aggregated outpatient services, the lesser of costs or charges.

### B.

Henry Ford is a nonprofit corporation which operates Henry Ford Hospital, a large tertiary care hospital, education, and research complex located in Detroit, Michigan, and participates as a provider of services in the Medicare program. As with all other providers, the Secretary pays Henry Ford through "intermediaries" for covered services provided to Medicare beneficiaries. In 1989, 1990, and 1992, due to the Secretary's regulations mandating the disagreggation of ambulatory surgical, radiology, and diagnostic services from all other outpatient services, the intermediary paid Henry Ford far less than the hospital's costs for outpatient services. In 1989, Henry Ford lost $4,561,617 on outpatient services; in 1990, $988,497; in 1992, $959,020.

After exhausting its administrative remedies, Henry Ford filed this action in district court challenging the validity of the regulations and seeking an order to the Secretary to compute and pay additional reimbursements. The district court granted the Secretary's motion for summary judgment, and Henry Ford appealed.

### II.

We review de novo an issue of statutory interpretation. *See Bartlik v. U.S. Dept. of Labor*, 62 F.3d 163, 165 (6th Cir. 1995). We read statutes and regulations with an eye to their

straightforward and commonsense meanings. *See Bartlik*, 62 F.3d at 165-66. "When we can discern an unambiguous and plain meaning from the language of a statute, our task is at an end." *Id.* at 166.

The Secretary argues that her regulations merely reflect the plain language in the Medicare statute requiring her to disaggregate ambulatory surgical, radiology, and diagnostic services when calculating reimbursements. For support, she points to § 1395*l*(a)(2)(B), which lays out the general lesser of costs or charges rule. That section directs that the rule be applied to outpatient services, with modified rules to be applied to particular services, including outpatient radiology and certain diagnostic procedures. *See* 42 U.S.C. § 1395*l*(a)(2)(B). Radiology and diagnostic services are dealt with in a separate subsection requiring application of the lesser of costs or charges or the blend amount. *See* 42 U.S.C. §§ 1395*l*(a)(2)(E) & 1395*l*(n). The same modified reimbursement method applies to ambulatory surgical services, as directed in a different subsection. *See* 42 U.S.C. §§ 1395*l*(a)(4) & 1395*l*(i)(3).

Henry Ford argues that, at best, the amended language of the statute is ambiguous. We agree with the Secretary, however, that, at least as to radiology and diagnostic services, the statute is clear. Under the statute's language, the general lesser of costs or charges rule applies to outpatient services "except" radiology and diagnostic services. *See* 42 U.S.C. § 1395*l*(a)(2)(B) (referring to subparagraph (E), which covers radiology and diagnostic services). In the Secretary's reading, and in ours, Congress's use of the word "except" is an explicit exclusion of radiology and diagnostics from the aggregate calculation for other outpatient services under the lesser of costs or charges rule. Taken in combination with the separate subsection articulating a distinct reimbursement formula, this language plainly required the Secretary to disaggregate radiology and diagnostic services from all other outpatient services when calculating reimbursement.

As with radiology and diagnostic services, a separate provision of the Medicare statute requires application of a modified reimbursement formula for ambulatory surgical services. *See* 42 U.S.C. § 1395*l*(a)(4). Unlike the other two excluded service areas, however, ambulatory surgical services performed in a hospital are not clearly excepted from the general lesser of costs or charges rule. *See* 42 U.S.C. § 1395*l*(a)(2)(B). Nonetheless, we agree with the Secretary that the plain statutory language requires the disaggregation of such services from all other outpatient services. The ambulatory surgical services section uses the same language governing its reimbursement calculation as that governing radiology and diagnostics. We find it implausible that Congress would have intended identical language to have inconsistent results. Because we find that Congress intended to disaggregate radiology and diagnostics from all other outpatient surgery, and because Congress used identical language when stating the appropriate calculation method for ambulatory surgical services, we find the plain language of the statute dictated the Secretary's regulations requiring disaggregation for ambulatory surgical services as well.

We note that the statute contains an internal inconsistency. The subsections describing the blend amount formula, in stating that one element of the calculation depends upon the lesser of costs or charges, specifically require a determination under § 1395*l*(a)(2)(B). *See* 42 U.S.C. § 1395*l*(n)(1)(A)(i). Section 1395*l*(a)(2)(B) itself explicitly excludes radiology and diagnostic services from application of its lesser of costs or charges rule, and implicitly excludes ambulatory surgical services by addressing them in a different subsection. *See* 42 U.S.C. §§ 1395*l*(a)(2)(B); 1395*l*(a)(4). We do not believe, however, that such an inconsistency necessarily creates an ambiguity in the otherwise clear statutory mandate. We disagree with Henry Ford's arguments that it is necessary to read the cross-references to §1395*l*(a)(2)(B) as mandating that amounts for the disaggregated services be included back into the aggregated services when calculating the aggregated amounts, which would indeed create the intellectually impossible result of including excluded information. Instead,