**In re Carl L. BROWN, Jr., June K. Brown, Debtors.**

**No. 01–65026.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Sept. 29, 2006.

---

Mina N. Khorrami, Columbus, OH, for Debtors.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for final evidentiary hearing on March 24, 2006 and April 7, 2006, upon Debtors' Motion to Modify Plan (Doc. 78) and the Objection thereto by Chad L. Brown, Sr. and Carl L. Brown, Inc. (Doc. 79), and Debtors' Objection to Claim of Chad L. Brown (Claim No. 7) (Doc. 89); and the Response of the Claimant (Doc. 90). Present at the hearing as trial counsel were Mina Khorrami representing the Debtors, Carl L. Brown Jr. and June K. Brown, and Brett Sheraw and George Fisher representing Chad L. Brown, Sr.[1]/ Carl L. Brown, Inc.

---

1. In this proceeding, Chad L. Brown and    Chad L. Brown, Sr. refer to the same person.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(B).

## II. Background and Findings of Fact

On September 21, 1999, Carl L. Brown, Jr. and his brother, Chad L. Brown Sr. dba Carl L. Brown, Inc.[2] ("Claimant" or "Chad") executed a Commercial Lease regarding real property located on Mt. Vernon Avenue, Columbus Ohio ("Lease"). Claimant had for some time operated a grocery store at 1315 Mt. Vernon Avenue, with parking lots adjacent to and across the street from the store; the store premises and parking lots are generally known as lots 20–24 and 31–33. Carl L. Brown, Inc. also owns numerous other lots in the area.

At Claimant's request, on September 22, 1999, Carl L. Brown, Jr. (sometimes "Carl") and June K. Brown ("Debtors") took over ownership and operation of the store. Although it appears that the parties discussed terms of a lease, they never agreed upon or fully completed the Lease; however, they agreed on an initial rent of $1000.00 per month for the store premises and attendant parking lots, and Claimant never gave Debtors notice of an increase in the rent. Additionally, they never reached a meeting of the minds on matters such as payment of taxes and insurance coverage. Although the Lease contains language which begins to address these expenses, the provisions are incomplete and given the circumstances under which the Lease was executed, the Court is unable to find that the parties intended the written document to be a binding agreement between the parties.

On December 21, 2001, Debtors filed a Petition for Relief under Chapter 13 of the Bankruptcy Code. The Lease was not disclosed on the Debtors' Schedules or Statement of Affairs, nor was Claimant included in the Debtors' Schedules as a creditor or party in interest. The Debtors assert that they were under the impression that the Lease was a transaction of the corporate entity that they formed in November 1999 known as "Carl L. Brown II, Inc." However, this contention is without merit as illustrated by the facts surrounding a foreclosure action.

On October 12, 2001, Bank One, NA filed a Complaint for Foreclosure of Mortgages in the Franklin County Court of Common Pleas (Debtors Exhibit 14c) regarding the store premises. On November 15, 2001, prior to the Debtors filing a Petition for Relief under Chapter 13 of the Bankruptcy Code, Debtors through their counsel filed a response to the foreclosure complaint (Debtors Exhibit 15). On December 27, 2001, Debtors' counsel filed a Notice of the Debtors' Chapter 13 bankruptcy proceeding with the Franklin County Court of Common Pleas requesting that the foreclosure be stayed (Debtors Exhibit 15a). However, the Debtors continued to proceed without disclosing and assuming the Lease through bankruptcy schedules and plan. On February 2, 2002, Bank One filed a motion requesting the Court of Common Pleas to maintain the foreclosure action in active trial status, stating in relevant part: "Plaintiff states that on December 26, 2001, a notice of Bankruptcy was filed.... [This] Notice states that in Bankruptcy Case No. 01–65026 a 'Defendant' filed bankruptcy.... Upon review of the Bankruptcy File, it was determined that the Bankruptcy was filed by a Carl L.

---

2. Although the use of the term "Inc." usually denotes a corporate entity, Chad Brown has used the name "Carl L. Brown, Inc." as a fictitious name or sole proprietorship in this proceeding and appears to have done so in his affairs with the Debtors.

Brown Jr. and June K. Brown. Neither Debtors are listed as Defendants in the Franklin County Common Pleas Court action. Further, Plaintiff, Bank One. N.A., is not listed as a creditor in the subject bankruptcy." *(Debtors Exhibit 15b)*.

On February 9, 2002, the Debtors filed an Opposition to Motion of Plaintiff to Maintain Action in Active Trial Status, attaching a copy of the Lease and requesting the court to maintain the stay of the foreclosure proceeding, on the basis that Carl L. Brown, Jr. was the tenant of the commercial property located at 1315 Mt. Vernon Avenue. *(Debtors Exhibit 15c)* Even as of this February 9, 2002 date, the Debtors were still within the 60–day limit prescribed by 11 U.S.C. § 365(d)(4) to assume or reject a non-residential real property lease; however, neither counsel for the Debtors nor the Debtors amended their Schedules or Chapter 13 Plan to disclose and assume the Lease. An Order Confirming the Debtors' Chapter 13 Plan was entered by this Court on April 17, 2002 (Doc. 38).

On August 2, 2004, the Debtors filed an Amended Schedule F, Creditors Holding Unsecured Nonpriority Claims, to add Claimant as a creditor on account of disputed unpaid rental charges on the Lease in the amount of $14,000.00, and an Amended Schedule G, Executory Contracts and Unexpired Leases (Doc. 77), to disclose the Lease with the Claimant. On August 3, 2004, the Debtors filed a Motion to Modify their confirmed Chapter 13 Plan in an attempt to assume the Lease with the Claimant (Doc. 78). On August 23, 2004, the Claimant filed an objection to the Debtors' Motion to Modify (Doc. 79). On October 23, 2004, the Court (Judge Bar-

bara J. Sellers) held a hearing on the Debtors' Motion to Modify and the Claimant's Objection, after which it postponed ruling and directed the Claimant to file a proof of claim for the amount owed.

The Claimant filed Claim No. 7 in the amount of $14,000.00 for Lease arrearages [3]. On March 15, 2005, the Debtors filed an Objection to the Claimant's Claim No. 7 (Doc. 89) on the basis that the amount of the claim exceeded the obligation owed. The Debtors' Motion to Modify Plan, the Claimant's Objection to the Debtors' Motion to Modify Plan, and the Debtors' Objection to Claimant's Proof of Claim No. 7 came before this Court for hearing on March 24, 2006 and April 7, 2006. The Debtors remain in possession of the store premises.

### III. Legal Analysis

A. *Debtors' Motion to Modify the Chapter 13 Plan to Assume the Lease with Claimant.*

The Court raised the issue of whether the Lease has been rejected as a matter of law pursuant to 11 U.S.C. § 365(d)(4). The acceptance or rejection of a nonresidential real property lease is governed by Section 365(d)(4) of the Bankruptcy Code, which provides in relevant part:

> ... in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected and the trustee shall immediately surrender

---

**3.** Claimant's Claim No. 7 states that the total amount due at the time the case was filed was $14,000.00. The Claimant checked the box stating that the claim amount includes interest or other charges in addition to the princi-

pal amount of the claim. However, Claimant did not attach any itemized statements or an accounting of additional charges in support of the amount of the claim, as required by Form B 10 (Official Form 10).

such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

It is clear from the statute that the Debtor or Trustee must assume or reject a nonresidential real property lease within 60 days after the date of the petition; failure to do so will result in the rejection of the lease as a matter of law. "The language of the statute is plain and unequivocal, and where that is so there is no room for maneuver. Debtor took no action within the statutory 60 day period.... Movant is therefore entitled to an order that debtor surrender the real property in question to it." *In re Hurst Lincoln–Mercury, Inc.*, 70 B.R. 815, 818 (Bankr. S.D.Ohio 1987). "[T]he debtor-lessee of a nonresidential real property lease must act within 60 days or the lease is deemed rejected under all chapters." *In re Burns Fabricating Company*, 61 B.R. 955, 956 (Bankr.E.D.Mich.1986). *Accord In re Miller*, 282 F.3d 874, 877 (6th Cir.2002) ("[the lease] was deemed rejected September 12, 1999, sixty days after the petition was filed.").[4] Because the Debtors were aware of the existence of the Lease, there is no basis on which the Court may disregard the strictures of the statute, and equitable arguments may not lie.

The Debtors argue that the Claimant has waived their rights under 11 U.S.C. § 365(d)(4). In support of this argument the Debtors rely upon the actual or constructive knowledge by the Claimant of the Debtors' bankruptcy. However, this argument misplaces the burden upon the Claimant rather than the Debtor or Trustee to assume the Lease. Additionally, the Debtors request that the Claimant be estopped from arguing that Section 365(d)(4) applies since the Claimants have received and continue to retain the rent and other benefits under the Lease. This argument is also misplaced, as the burden is not on the Claimant and the acceptance of payments for rent by the Claimant in and of itself does not constitute a waiver. "The Landlord has no affirmative duty to seek lease rejection upon the expiration of the 60 day period following the filing of the petition in bankruptcy as § 365(d)(4) of the Code states that the **Lease is deemed rejected if the Debtor (or the Trustee) fails to move to assume the Lease within the 60 day period,** and such rejection is self-executing." *In re Damianopoulos*, 93 B.R. 3, 7 (Bankr.N.D.N.Y.1988) (emphasis added). Moreover, the Claimant is entitled to receive compensation for the use of the premises during the time of possession by the Debtors, and as noted by *Damianopoulos*, "acceptance of any such performance does not constitute a waiver or relinquishment of the lessor's rights under such lease." *Id.* The Court finds the Debtors' argument of waiver of 11 U.S.C. § 365(d)(4) by the Claimant not applicable in the instant case.

---

4. The Court finds additional support for this position in *Rogers v. Laurain*, 113 F.3d 595 (6th Cir.1997), in which the Sixth Circuit Court of Appeals held that Bankruptcy Rule 4003(b) was unambiguous, requiring that an extension of time be granted within the prescribed thirty-day period. The version of Rule 4003(b) in effect at that time provided in relevant part: "The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors ... unless, **within such period**, further time is granted by the court." Fed. R. Bankr.P. 4003(b)(1997)(emphasis added). The language of Section 365 is strikingly similar wherein it states "Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected,...." 11 U.S.C. § 365(d)(4) (2001).

In the instant case, the Debtors did not attempt to assume or reject the Lease within 60 days of filing their Petition for Relief. The Debtors' case was filed December 21, 2001, the Debtors did not seek to disclose and assume the Lease, or an extension of time to do so until August 2, 2004, well after the 60–day period expired. Under the applicable provisions of the Bankruptcy Code, the Debtors have failed to effectively assume the Lease with the Claimant pursuant to 11 U.S.C. § 365(d)(4). "The language of the statute [11 U.S.C. § 365(d)(4)] is clear and unambiguous. If the trustee or debtor does not act within 60 days of the petition for relief, the lease is deemed rejected by operation of law. Section 365(d)(4) was constructed so as to remove all doubt between debtors and their contractual lessors." *In re Burns Fabricating Company*, 61 B.R. at 957, (citing 1978 U.S.Code Cong. & Admin. News pp. 5787, 5845.)

Based on the forgoing, and given the plain reading of 11 U.S.C. § 365, this Court finds that the Debtors failed to assume or reject the nonresidential real property Lease within a timely manner and the Lease is deemed rejected by operation of law. Section 1322(b)(7) provides that the debtor's chapter 13 plan may "provide for the assumption, rejection, or assignment of any executory contact or unexpired lease of the debtor not previously rejected under such section." The Lease having been rejected, the Debtors' Motion to modify the plan to assume the Lease with the Claimant must be denied.

*B. Debtors' Objection to Claimant's Proof of Claim*

The Claimant filed Proof of Claim No. 7, stating that the Debtors were in default of their Lease payments in the amount of $14,000.00. Bankruptcy Code section 365(g) provides in pertinent part:

> [T]he rejection of an executory contract or unexpired lease of the Debtor consti-

tutes a breach of such contract or lease—

> (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition[.]

11 U.S.C. § 365(g)(1) (West 2001). "The effect of the breach is to allow the party injured by the rejection to seek allowance of its resulting claim as a pre-petition unsecured claim." *In re American HomePatient, Inc.*, 414 F.3d 614, 617 (6th Cir. 2005). This Court has determined that the Lease was rejected by operation of law under 11 U.S.C. § 365(d)(4). Therefore, the Debtors effectively breached their Lease with the Claimant immediately prior to the date of commencement of the Debtors' Chapter 13 case on December 21, 2001.

█ Generally, in determining the amount of damages, the Court must rely upon § 365(g)(1) and 502 of the Bankruptcy Code. "[W]e conclude that section 502(g) requires that damages be fixed as of the date before the date of the filing of the petition. [C]onsistent with section 365(g)(1), we conclude that damages should be fixed as of the time of the deemed breach, which is immediately before the date of the filing of the petition." *American HomePatient, Inc.*, 414 F.3d at 618.

The Lease between the parties was executed September 21, 1999 and states that the lease period commences on that date. The Debtors began operating the store on September 22, 1999. The Lease further provides that rent would be payable on the first day of each month during the term of the Lease and does not state that it is retroactive. No testimony was presented to clarify this ambiguity, and therefore the Court can only assume that Lease payments were to begin on October 1, 1999. At the time of execution of the Lease,

Claimant was indebted to the Ohio Department of Commerce, Division of Liquor Control (sometimes "Division") in the amount of $50,015.80, and the parties agreed that Debtors would pay the Division $1000.00 in lieu of rent. As of the date of commencement of this case on December 21, 2001, Debtors had paid the Division $15,000.00. *See Debtors Exhibit 20a.* Therefore, the Debtors were in arrears in Lease payments in the amount of $12,000.00 on December 20, 2001, the day prior to the Debtors filing for relief under Chapter 13 of the Bankruptcy Code. The Claimant also testified that $12,000.00 was the pre-petition Lease arrearage. There was no evidence presented pertaining to interest or late charges.[5]

However, the Debtors assert that they have made loans and provided services to the Claimant both before and after the filing of the Debtors' Petition, the value of which should be applied to offset the Claimants' claim. The Debtors summarized as follows the debts of Claimant that they paid, expenses that they assert were incurred for the benefit of or paid on behalf of the Claimant and other items for which they assert Claimant is responsible *(Debtors' Exhibit 22):*

| Date | Purpose | Amount |
|---|---|---|
| 1. 9/20/1999 | Check No. 6127 in the amount of $1,600.00 from Dorothy M. Brown to Ohio Liquor Control—amount repaid. | $ 1,600.00 |
| 2. 9/21/1999 | Payment of deposit to AEP due to arrearage created by Chad L. Brown. | $ 2,470.00 |
| 3. 9/21/1999 | Past due water bill to City of Columbus. | $ 1,502.95 |
| 4. 10/12/1999 | Payment of insurance premium, including insurance on vehicles of Chad L. Brown and Dorothy Brown and on the building for 3 years ($1,051.25 initially then over $800.00 every three months for three years). | $ 0[6] |
| 5. 10/14/1999 | Legal fees to Attorney Winkfield to prevent termination of vendor's license. | $ 700.00 |
| 6. 1/17/2000 | Payment to Chad L. Brown for trucking school. | $ 2,500.00 |
| 7. 4/1/2000–10/20/2000 | Cutting grass on lots around 1315 Mt. Vernon Avenue.[7] | $ 5,250.00 |
| 8. 6/27/2000 | Payment to Attorney Ted Scott regarding Bank One foreclosure. | $ 1,500.00 |
| 9. 12/31/2000 | Payment to cover check of Carl L. Brown, Inc. to Columbus Candy that was returned for insufficient funds. | $ 244.95 |
| 10. 1/21/2001–7/23/2001 | Legal fees paid to David A. Ison on account of Dorothy Brown and Carl L. Brown, Inc. | $ 3,480.45 |
| 11. Approximately 2/2001 | Payment of $300.00 cash to David Ison. | $ 300.00 |

**5.** Claimant further testified that, as of the date of the hearing, Debtors also owe $2000 in post-petition rent arrearages. Section 502 of the Bankruptcy Code allows a landlord to file a claim for post-petition damages upon rejection of a lease. However, since Debtor is still in possession of the premises, inclusion of post-petition amounts due is premature.

**6.** On Debtors' summary, they state $0 for the amount, although the Debtors testified that an expense was incurred.

**7.** Items 7, 12 and 13 pertain to lots owned by Carl L. Brown, Inc. other than the store premises and parking lots.

| | | | |
|---|---|---|---|
| 12. | 4/1/2001–10/22/2001 | Cutting grass on lots around 1315 Mt. Vernon Avenue. | $ 5,670.00 |
| 13. | 4/1/2002–10/31/2002 | Cutting grass on lots around 1315 Mt. Vernon Avenue. | $ 6,090.00 |
| 14. | 10/14/1999–1/15/2000 | Loss of Income from no vendor's license approximately $13,000.00 based on 1999–2000 figures—following years sales were $33,188.51. | $ 0[8] |
| Total | | | $ 31,308.35 |

■ In response to the Debtor's contentions, Claimant contends that the Debtors failed to pay taxes for all the Carl L. Brown Inc. properties, maintain insurance coverage for the store, and properly maintain the properties, both pre-petition and post-petition, resulting in costs to Claimant.

When one who is not obligated to do so pays debts of another, the paying party in some instances can assume the same position as the creditor with the same rights and causes of action of the creditor against the obligor. This is the principle known as "subrogation," which is defined as "the substitution of one person for another; that is, one person is allowed to stand in the shoe of another and assert that persons' rights." *Black's Law Dictionary* (8th ed.2004). There are generally two types of subrogation, legal or conventional. Legal subrogation occurs by operation of law and applies when one having a liability or right or a fiduciary relationship pays the debt of another under such circumstances that he is in equity entitled to step into the shoes of the creditor he has paid. *State of Ohio Dept. of Taxation v. Jones,* 61 Ohio St.2d 99, 102, 399 N.E.2d 1215, 1218 (1980). "In order to entitle one to subrogation, his equity must be strong and his case clear. *Harshman v. Harshman* (1941), 35 Ohio Law Abs. 633, 636, 42 N.E.2d 447." *Id.* Conventional subrogation is based upon a contract between the parties, coming about by contractual obligations of the parties and focusing upon the agreement of the parties. *See N. Buckeye Edn. Council Group Health Benefits Plan v. Lawson,* 103 Ohio St.3d 188, 814 N.E.2d 1210 (Ohio 2004). There is no general rule as to how to determine whether a right of subrogation exists. *73 Am Jur 2d Subrogation § 10.*

■ However, subrogation is not available to one who is a mere volunteer paying another's obligation. *See Reed v. Ramey,* 82 Ohio App. 171, 80 N.E.2d 250 (1947). "[T]he doctrine of subrogation applies for bankruptcy proceedings in 'every instance in which one person, **not** acting as a mere volunteer or intruder, pays a debt for which another is primarily liable....' " *Creditor's Committee v. Com. of Mass., Dept. Of Revenue,* 105 B.R. 145, 148 (D.Mass.1989) *citing In re Trasks' Charolais,* 84 B.R. 646, 648 (Bankr.D.S.D.1988) (emphasis added). A volunteer is one who offers himself for a service without obligation to do so, or one who performs a service without pay. *The Random House College Dictionary* (1st ed.1980). In the instant case, many of the above debts paid by the Debtors were those of the Claimant, and there is no evidence that the creditors holding such debts could seek payment from the Debtors.

It appears that in the past, the parties had a fairly friendly relationship, and like many families, handled the financial trans-

**8.** Debtors' stated $0 for this item on their summary, although the Debtors testified that they incurred a loss due to Claimant's actions or failure to act prior to turning over the store to them, which resulted in loss of the vendor's license.

actions and affairs between them very casually. However, Debtors have not shown that they had a liability or right or a fiduciary relationship which justified or required they pay the Claimant's debts or incur the expenses on Claimant's behalf. Neither of the parties in the instant case testified that there was an agreement between the parties that the Claimant agreed to pay the Debtors for the expenses and debts that Debtors paid. Carl even testified in connection with the lawn care expenses he paid, that he was just trying to help his brother out. Additionally, the Debtors have never demanded payment or reimbursement from the Claimant for these expenses and debt payments. Based upon the evidence presented and testimony of the parties, the Court finds that the Debtors are volunteers.

The Debtors listed the debts and expenses that they paid in 14 categories as outlined above. Addressing these *seriatim;* the Court finds the following:

Item 1 is a $1,600.00 payment by Dorothy Brown to the Division of Liquor Control for debt the Claimant incurred immediately prior to turning over the store to the Debtors. Dorothy Brown is not a party to this action. The Debtors state that they have repaid Dorothy those funds; however, they did not provide proof of same.[9] In any case, the Debtors were not responsible for this debt of the Claimant and in light of the discussion above, are not entitled to subrogation.

Item 2 is a payment of a deposit to AEP. This is not a debt of Claimant; this is a deposit paid by the Debtors to obtain utility service, and which is refundable to the Debtors upon meeting specific terms and conditions of AEP. Debtors are not entitled to reimbursement of the sum or to setoff the amount against Claimant's claim.

Item 3 is for past due water bills allegedly paid by the Debtors; however, the Debtors have not supplied the Court any corroborating evidence that Debtors paid this debt. Moreover, it was a debt of Claimant for which Debtors had no obligation or liability, and they are not entitled to subrogation.

Item 4 is for payment of insurance for the store and for vehicles of Claimant and Dorothy Brown, Chad and Carls' mother ("Dorothy"). The Debtors did not provide any itemization or a breakdown illustrating that portion of the expense attributable to the store. To the extent that the insurance covered vehicles not owned by the Debtors, the Debtors had no obligation or liability for the cost and are not entitled to subrogation.

Items 5, 8, 10, and 11 are for legal fees: these legal services were rendered on behalf of the Debtors and Dorothy. As such, Claimant is not responsible for the fees and the expense cannot be setoff against his claim. Debtors testified that the legal expenses rendered by David Ison were rendered on behalf of or for the benefit of the Claimant; however, Debtors provided no corroboration of same and the notations on the payment checks to Mr. Ison stated that they were for Dorothy's account.

Item 6 is a payment to Claimant for trucking school. While claimant admits that he received the funds, there is no evidence that Claimant agreed to reimburse the Debtor for this expense.

Items 7, 12 and 13 are expenses incurred by the Debtors for the cutting grass on lots around 1315 Mt. Vernon Ave-

---

9. Debtors formed a corporate entity "Carl L. Brown II, Inc." which, according to their testimony, paid many of the business expenses of the store. With this evidence, it becomes particularly important that the Court have corroborating evidence that the Debtors rather than the corporate entity paid expenses that are apparently business related.

nue (not connected to the store and parking lots) owned by Carl L. Brown, Inc. Item 13 was paid post-petition by the Debtor and is not relevant to the matter under consideration; however, as to items 7 and 12, there does not appear to be an agreement between Debtors and Claimant that Claimant would reimburse the Debtors for this expense. The parties had discussed development of these surrounding lots; however, they did not reach any agreement on the topic. The Debtors essentially volunteered when they arranged for lawn care without any specific agreement as to the Claimant paying these costs.

Prior to the Debtors assuming operation of the store, checks issued to certain store vendors by Chad were returned for insufficient funds. Item 9 is a payment by the Debtors to store vendors on account of the returned checks. However, the Court cannot find that the Debtors had a duty to pay this debt, nor was it shown that the Debtors and Claimant had any agreement for reimbursement of this expense by Claimant or for setoff against sums due him.

Finally, item 14 was for losses allegedly incurred by the Debtors due to the suspension of the store's vendor's license (issued to Claimant) immediately after they assumed operations of the store. However, once again, there is no evidence that the Claimant had any responsibility to the Debtors in this matter. Additionally, the Court finds that Debtors' calculation of the damages they suffered too speculative. Finally, most of their damages could have been avoided had they applied for and obtained their own vendor's license in a timely fashion.

■ Just as the Debtors have no right of subrogation, nor can Claimants assert that Debtors were obligated to pay taxes, insurance or other expenses that Debtors did not agree to pay. As discussed above,

the Court has found that the parties did not reach an agreement on much other than the rental of the store premises and parking lots for the sum of $1000.00 per month. Although Claimant insists that the Debtors are responsible for these costs, he never sent them the bills, asked them to pay the bills, or demanded reimbursement after Claimant paid the bills.

Based on the foregoing, this Court finds that the Claimant is entitled to an unsecured claim in the amount of $12,000.00.

*IV. Conclusion*

In accordance with the foregoing, the Claimant's Objection to Debtors Motion to Modify the Confirmed Chapter 13 Plan must be sustained. The Debtors' Motion to Modify the Confirmed Chapter 13 Plan to assume the Lease with the Claimant must be denied. The Debtors' Objection to Claim must be sustained and Claim 7 is allowed in the reduced amount of $12,000.00 as an unsecured, nonpriority claim. A separate Order will be entered consistent with this Opinion.

